**FILED**
Lucinda B. Rauback, Clerk
**United States Bankruptcy Court**
**Augusta, Georgia**
**By jpayton at 6:47 pm, Sep 30, 2013**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number <u>11-10218</u> |
| THOMAS J. MCFARLAND | ) | |
| | ) | |
|    Debtor | ) | |
| | ) | |
| ──────────────── | ) | |
| | ) | |
| A. STEPHENSON WALLACE, TRUSTEE | ) | |
| | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | Number <u>11-01021</u> |
| THOMAS J. MCFARLAND | ) | |
| SHERRY H. MCFARLAND | ) | |
| | ) | |
|    Defendants | ) | |
| ──────────────── | ) | |

## <u>OPINION AND ORDER</u>

      This order addresses the Chapter 7 Trustee's ("Trustee") 11 U.S.C. §548(a)(1)(A) and (a)(1)(B) actions to set aside debtor Thomas J. McFarland's ("Debtor") transfer of a half interest in three parcels of real property to his non-debtor wife. This is a core proceeding pursuant to 28 U.S.C. §157, and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the reasons set forth below, the Trustee's action is granted.

## FINDINGS OF FACT

In 1968, Debtor married Sherry H. McFarland ("Mrs. McFarland") in Chatham County, Georgia. A.P. Dckt. No. 8,[1] Countercl. of Sherry H. McFarland ¶2; Trial Tr., Test. of Sherry H. McFarland, 6:3-5;[2] Trial Tr., Test. of Thomas J. McFarland, 43:10-12. Shortly thereafter on May 15, 1968, a warranty deed conveying three lots of Chatham County real property ("Property") from Aimee Lindauer Lankford, Jean Lindauer Harris, Newell Denton and Florence Striph to Debtor was recorded in the Chatham County real estate records. A.P. Dckt. No. 1 ¶5; A.P. Dckt. No. 8, Countercl. of Sherry H. McFarland ¶1; Trial Tr., Test. of Sherry H. McFarland, 6:18-20; A.P. Trial Ex. D-1. The sellers are not related to the McFarlands. The Property consists of three vacant and contiguous wooded lots. A house was located on the Property when it was purchased and Mr. and Mrs. McFarland lived there for a short period of time. Thereafter, the house was rented to various tenants for several years. It was destroyed in a fire

---

[1] References to the docket of the underlying Chapter 7 case (Case No. 11-10218) appear in the following format: "Case Dckt. No. __." References to the docket of this adversary proceeding (Adversary Proceeding Number 11-01021) appear in the following format: "A.P. Dckt. No. __."

[2] The trial transcript in the adversary proceeding, reflecting testimony from October 26, 2012, appears at A.P. Dckt. No. 71. References to the trial transcript appear in the following format: Trial Tr., Test. of [speaker], page number: line(s) on page.

years ago.   Trial Tr., Test. of Sherry H. McFarland, 10:14-17, 11:5-6, 38:17-19; A.P. Dckt. No. 76.

Mrs. McFarland grew up in the area and always wanted to return.   Trial Tr., Test. of Sherry H. McFarland, 30:22-25, 32:9-11, 39:1-2.   Before meeting Mrs. McFarland, Debtor had no connection to Chatham County.  Trial Tr., Test. of Thomas J. McFarland, 31:9-12, 59:13-16.   Mrs. McFarland discovered the Property was for sale and the Property was purchased in 1968 for $15,000.00.  Id. at 59:23-60:8; Trial Tr., Test. of Sherry H. McFarland, 31:20-25, 6:18-24.   Two loans were obtained to finance the purchase: a $10,000.00 loan from Atlantic Savings & Trust, Co. ("Atlantic") and a $5,000.00 loan from Mrs. McFarland's father, Noel L. Harrison ("Mr. Harrison").  Id. at 6:23-7:6.   The money loaned by Mr. Harrison had originally been set aside for Mrs. McFarland's college education.   Id. at 35:23-36:1; Trial Tr., Test. of Thomas J. McFarland, 61:14-22.

Only Debtor's name is listed on the original warranty deed to the Property.  A.P. Dckt. No. 75; A.P. Dckt. No. 76.   In connection with the purchase, Debtor signed and delivered the promissory notes and security deeds to Mr. Harrison and Atlantic, respectively.   Trial Tr., Test. of Sherry H. McFarland, 7:7-13; A.P. Trial Ex. D-2; A.P. Trial Ex. P-21; A.P. Trial Ex. P-22. Mrs. McFarland is not on the promissory notes ("Notes") or the security deeds ("Security Deeds").   Over the years, money from

✎AO 72A
(Rev. 8/82)

the Debtor and Mrs. McFarland's (the "McFarlands") joint bank account ("Joint Account") was used to repay the loans. Trial Tr., Test. of Sherry H. McFarland, 16:16-25, 17:25-18:2, 33:18-23. While both Debtor and Mrs. McFarland's earnings were deposited into the Joint Account, Debtor contributed substantially more money to the household over the course of their marriage and these loans. Trial Tr., Test. of Sherry H. McFarland, 12:9-15:7, 16:23-25, 21:2-21; Trial Tr., Test. of Thomas J. McFarland, 45:3-46:25, 49:7-50:7, 58:9-18. From 1968 to 1971, Mrs. McFarland held various minimum wage jobs making significantly less money than Mr. McFarland. From 1971 until 1989, Mrs. McFarland contributed no outside earnings to the Joint Account. Trial Tr., Test. of Sherry H. McFarland, 23:16-24:4; Trial Tr., Test. of Thomas J. McFarland, 53:24-54:5. The loans were respectively paid off in 1971 (Harrison) and 1983 (Atlantic). A.P. Trial Exs. P-21 and P-22. The amount contributed from Mrs. McFarland's wages to the Joint Account and to purchase the Property is unclear, but it is significantly less than the money contributed by Mr. McFarland.

While both Mrs. McFarland and her mother were part of the conversation between her father and Debtor regarding the loan, there was no discussion about including Mrs. McFarland on the Notes or deeds. Trial Tr., Test. of Sherry H. McFarland 34:8-22. Debtor testified that "[m]y father-in-law was a

AO 72A
(Rev. 8/82)

definite traditionalist, old-school, and he had [the lawyer] make all the property, the notes, the note that he held and all, in my name because I was the head-of-the household . . . My father-in-law didn't allow voting. He told me how it was going to be and I said, '[Y]es, sir.'" Trial Tr., Test. of Thomas J. McFarland, 61:4-11.

The actual sellers of the Property were third parties. The warranty deed tendered at closing vested title in Mr. McFarland alone. A.P. Trial Ex. P-1. From 1968 until 2006 there was no deed into Mrs. McFarland regarding the Property. Nevertheless, both Debtor and Mrs. McFarland assert that they have always considered the Property to be jointly owned. Trial Tr., Test. of Sherry H. McFarland 36:4-5, 37:16-18; Trial Tr., Test. of Thomas J. McFarland, 60:11-19. To support this argument, Mrs. McFarland testified that she never represented to her parents that the loan was to acquire the Property solely for her husband, and Debtor testified that Debtor never thought or represented that the Property was not to be their joint property. Trial Tr., Test. of Sherry H. McFarland, 34:19-22; Trial Tr., Test. of Thomas J. McFarland, 61:23-62:7, 70:19-25. Debtor likewise contends that Mr. Harrison, although not the seller, considered it jointly owned and loaned the money to Debtor alone because of his traditionalist views. Trial Tr., Test. of Thomas J. McFarland, 61:4-11. Debtor further contends that most of the

people in Savannah considered the Property to be both Debtor's and Mrs. McFarland's property, without regard or consideration of the real estate records and referred to it as "Sherry and Tom's land". Id. at 62:1-7, 70:22-25. However, Debtor testified that he and Mrs. McFarland never had an agreement that Mrs. McFarland be the grantee on the deed or would pay half of the purchase price. Trial Tr., Test. of Thomas J. McFarland, 54:18-55:1.

Neil B. Reagan, Sr., a neighbor testified that he thought both Debtor and Mrs. McFarland owned the land, but he did not recall whether Debtor ever referred to the Property as being owned by Debtor alone or by both Mr. and Mrs. McFarland. Trial Tr., Test. of Neil B. Reagan, Sr. 82:15-16, 83:25-84:2, 84:3-12, 88:3-9. He did not know who purchased the land or how the land was titled. Id. at 87:3-9. Mr. Reagan said his impression was based upon common customs, which would assume if he bought land it belonged to him and his wife. Id. at 83:22-25; 84:1-2; 85:19-25.

The McFarlands also submitted depositions of Joan English and Carol Reed. Mrs. English quoted Mr. Harrison as saying "Sherry and Tom" had purchased the Property and Mrs. Reed stated that Mrs. McFarland's mother told her that "Tom and Sherry had bought the property."[3] A.P. Trial, Exs. D-5, Reed Dep. at

---

[3] For reasons discussed hereafter, these depositions are admitted into evidence.

✎AO 72A
(Rev. 8/82)

5:21-25, Dec. 2, 2011; and D-8, English Dep. at 5:14-16, Dec. 2, 2011.

Debtor served in the military, and the McFarlands moved several times over the years. Trial Tr., Test. of Sherry H. McFarland, 38:13-17; Trial Tr., Test. of Thomas J. McFarland, 49:13-17. They purchased several homes, including homes in Kentucky and Georgia. Trial Tr., Test. of Sherry H. McFarland, 22:19-23:3; Trial Tr., Test. of Thomas J. McFarland, 49:16-22; Trial Tr., Closing Arg. of Bell, 102:7-8. Mrs. McFarland testified that the home in Appling, Georgia was titled jointly in both Debtor and her names. Trial Tr., Test. of Sherry H. McFarland, 24:13-18.

While the McFarlands lived out of state, they rented the house on the Property to third parties for several years. Id. at 11:12-12:1. Mrs. McFarland testified through the years she contributed to the maintenance by purchasing the necessary materials for people to maintain the house during that time and helped physically clear the land. Id. at 10:18-11:9-14. However, despite Mrs. McFarland's purported contributions and despite the couple's purported conversations about changing the Property title to reflect their joint ownership, legal title to the Property remained vested solely in Debtor's name for more than 40 years. Id. at 8:6-7, 36:8-14; Trial Tr., Test. of Thomas J. McFarland, 57:10-11, 63:9-15.

It was not until November 2009 that, as a reaction to a pending law suit (the "Suit"), Debtor took action to "correct" the real estate records.   Trial Tr., Test. of Thomas J. McFarland, 57:14-24.   The Suit was filed in April 2008 by Joylynn Hagen ("Ms. Hagen"), who sought damages for the personal injuries she sustained in a car accident with Debtor.   A.P. Dckt. No. 43 ¶6; A.P. Dckt. No. 53 page 3; A.P. Dckt. No. 75 page 4; A.P. Dckt. No. 76 page 5.   Debtor knew that Ms. Hagen had suffered extensive injuries.   Trial Tr., Test. of Thomas J. McFarland, 55:7-25.   Debtor also knew Ms. Hagen had lost a substantial amount of wages as a consequence of the accident.   Id.

On October 29, 2009, the parties unsuccessfully attempted to mediate Ms. Hagen's claim.   Id. at 56:3-4.   Eleven days later, Debtor executed a Deed of Gift ("Deed of Gift") which transferred the Property to himself and Mrs. McFarland as tenants in common, effectively evidencing a half undivided interest as being owned by Mrs. McFarland.   A.P. Trial Ex. P-7.; A.P. Dckt. No. 1, Ex. A; A.P. Dckt. No. 1 ¶6; A.P. Dckt. No. 8 Second Defense; Trial Tr., Test. of Thomas J. McFarland, 55:4-6, 56:3-18.   It is undisputed that Debtor's actions in regards to the Property were taken in an effort to prevent Ms. Hagen from reaching Mrs. McFarland's purported half interest in the Property.   Trial Tr., Test. of Thomas J. McFarland, at 57:14-24.   Reaffirming that purpose, Debtor testified he feared that Ms.

AO 72A
(Rev. 8/82)

Hagen's attorney would try to financially "ruin him"[4] and he executed the Deed of Gift to protect the half interest in the Property that he claims always belonged to his wife. Id.

The Deed of Gift provides that Debtor conveyed the Property to Debtor and Mrs. McFarland as tenants in common "for and in consideration for the love and affection [Debtor has] for [his] wife . . . recognizing her contribution to the purchase of the [P]roperty . . . . through the obtaining of a loan from her family, the subsequent payments made by her during the time [Debtor] served in the Vietnam War, and her contributions through the years in maintaining this [P]roperty, and, in order to have the legal title reflect the equitable title which my wife hold in this [P]roperty . . . ." A.P. Trial Ex. P-7; A.P. Dckt. No. 1, Ex. D-7.

When questioned about the consideration recited in the Deed of Gift, Mrs. McFarland clarified that the recited loan referred to the $5,000.00 loan from her father, that the recited "payments" referred to her physical delivery of the payments on the promissory note to her parents' home and to Atlantic, that these payments were from the McFarlands' Joint Account, and that the recited contributions referred to her aforementioned maintenance of the rental house and help clear cutting of the

---

[4]   The parties dispute the exact language used by Ms. Hagen's counsel, but it is undisputed that the accident was serious and that he is aggressively pursuing his client's claim.

Property.   Trial Tr., Test. of Sherry H. McFarland, 9:5-19:14. Mrs. McFarland also testified that when the Deed of Gift was executed in 2009, she paid no money contemporaneously in exchange for the Property. Id. at 12:2-4.

Over a year after Debtor executed the Deed of Gift, on February 2, 2011, two significant events occurred. First, a jury awarded Ms. Hagen a judgment against Debtor for $1,050,000.00 in the Suit, and second, Debtor, but not Mrs. McFarland, filed for Chapter 7 bankruptcy relief. A.P. Dckt. No. 1 ¶7; Case Dckt. No. 1; Trial Tr., Test. of Thomas J. McFarland, 56-57; A.P. Trial Ex. P-16. The Debtor's main debt in bankruptcy is this Judgment. Case, Cl. No. 1. Debtor scheduled the value of a half interest in the Property at $350,000.00. Case Dckt. No. 10, Sch. A.

The Trustee seeks to avoid Debtor's 2009 transfer of an interest in the Property to Mrs. McFarland as a fraudulent transfer under 11 U.S.C §548(a)(1) and §548(a)(1)(B) and §550. A.P. Dckt. No. 1.

## CONCLUSIONS OF LAW

Section 548 of the Bankruptcy Code provides, in relevant part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

✎ AO 72A
(Rev. 8/82)

> (A)   made  such  transfer  .  .  .  with  actual  intent
> to  hinder,  delay,  or  defraud  any  entity  to
> which  the  debtor  was  or  became,  on  or  after
> the  date  that  such  transfer  was  made  .  .  .
> indebted;  or
>
> (B)(i)  received  less  than  a  reasonably  equivalent
> value  in  exchange  for  such  transfer  .  .  .;  and
>
> (ii)(III)  intended  to  incur,  or  believed  that  the
> debtor  would  incur,  debts  that  would  be  beyond  the
> debtor's  ability  to  pay  as  such  debts  matured[.]

11 U.S.C. §548(a)(1).

The  Trustee  contends  Debtor  transferred  the  Property interest  with  the  actual  intent  to  hinder,  delay  or  defraud  his creditors.    The  Trustee  further  argues  that  Debtor  did  not receive  reasonably  equivalent  value  in  exchange  for  the  Property at  a  time  when  Debtor  believed  he  would  incur  debts  beyond  his ability  to  pay.    A.P.  Dckt.  No.  75.    Based  upon  these allegations,  the  Trustee  claims  that  Debtor's  transfer  of  the half  interest  in  the  Property  to  his  non-debtor  wife  was  a fraudulent  transfer  under  §548(a)(1)(A)  and  (B)(i)-(ii)(III),  and should  be  avoided  for  the  benefit  of  the  bankruptcy  estate pursuant  to  11  U.S.C.  §550.    A.P.  Dckt.  No.  1  ¶¶7-10;  A.P.  Dckt. No.  75.

Conversely,  the  McFarlands  contend  Mrs.  McFarland already  had  a  half  interest  in  the  Property  prior  to  the execution  of  the  Deed  of  Gift,  and  that  the  Deed  of  Gift  only served  to  reflect  this  interest.    A.P.  Dckt.  No.  76.    Thus,

✎AO 72A
(Rev. 8/82)

because the Deed of Gift actually transferred no interest, there was no transfer of property subject to §548.  Id.

Furthermore, the McFarlands claim the Trustee has failed to show that the Property was transferred with an intent to defraud under §548(a)(1)(A).  Id.  They also contend the Trustee failed to carry his burden in establishing that the transfer was made for less than reasonably equivalent value by the Debtor, when he was insolvent or believed he would incur debts beyond his ability to pay.

Finally, Mrs. McFarland also filed a counterclaim contending that she provided value in good faith to secure the loan from her father and partially repaid the loans from the income she obtained through her employment.  A.P. Dckt. No. 8, Counterclaim; A.P. Dckt. No. 43 ¶¶6 and 8.  Pursuant to §548(c) Mrs. McFarland argues she retains an equitable interest in the corpus of the resulting trust imposed upon the Property entitling her to recover half of any proceeds realized from the sale of the Property.  Id. at ¶¶9-10.

**11 U.S.C. §548(a)(1).**

To establish a conveyance as actually fraudulent under §548(a)(1)(A), the Trustee has the burden to prove the following elements by a preponderance of the evidence: (1) a transfer, (2) of an interest of the debtor in property, (3) within two years of the petition date, and (4) made by the debtor with actual intent

to hinder, delay, or defraud any current or future creditor of the debtor. In re Ojemeni, 2008 WL 7870966, at *2 (Bankr. N.D. Ga. June 13, 2008); 11 U.S.C. §548(a)(1)(A).

To prevail on his claim under §548(a)(1)(B), the Trustee must prove by a preponderance of the evidence that there was (1) a transfer, (2) of an interest of the debtor in property, (3) within two years of the petition date, (4) for which the debtor received less than equivalent value in exchange, including payment of a debt, and (5) intended to incur, or believed the debtor would incur, debts beyond the debtor's ability to pay as such debts matured. Id.; 11 U.S.C. §548(a)(1)(B).

## 11 U.S.C. §541.

A threshold issue under both §548 actions is whether the Debtor actually made a transfer of an interest of the Debtor in property.[5] Section 541(a) identifies property of the bankruptcy estate and provides that "[t]he commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). Section 541(d) provides further that:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an

---

[5] It is undisputed the Deed was executed and recorded within two years of the filing of the bankruptcy petition.

✏AO 72A
(Rev. 8/82)

equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. §541(d). The McFarlands argue the transfer should not be avoided under §548 because Debtor held only bare legal title and not an equitable interest in Mrs. McFarland's purported half interest in the Property. A.P. Dckt. No. 8, Second Defense, Third Defense, Fourth Defense; A.P. Dckt. No. 43 ¶12(a). As a result, they contend there was no §548 transfer because Mrs. McFarland already had an equitable half interest in the Property, and thus Debtor did not transfer any of **his own** interest to Mrs. McFarland when he executed the Deed of Gift. They contend this equitable interest arose as the result of an implied trust in favor of Mrs. McFarland. Begier v. I.R.S., 496 U.S. 53, 59, 110 S.Ct. 2258, 2263 (1990)(A debtor does not have an equitable interest in property he holds in trust for another); In re Penton, 2013 WL 1208748, at *3 (Bankr. N.D. Ga. Feb. 15, 2013)("It is well settled in bankruptcy practice that debtors do not own an equitable interest in property held in trust for another, and consequently, such funds do not constitute 'property of the estate' for bankruptcy purposes.") Conversely, the

✎AO 72A
(Rev. 8/82)

Trustee contends that Mrs. McFarland did not hold an equitable interest in the Property by virtue of an implied trust, or otherwise.

"[T]he nature of a [debtor's] interest in property is determined by state law." In re Sinnreich, 391 F.3d 1295, 1297 (11th Cir. 2004)(citing Butner v. U.S., 440 U.S. 48, 55 (1979)). Because the Georgia fraudulent transfer statute, O.C.G.A. §18-2-74, is virtually identical to §548 of the Bankruptcy Code, Georgia cases are analogous to cases considering §548. Kerr v. Cressaty Metals, Inc. (In re Christou), 2010 WL 4008191, at *3 (Bankr. N.D. Ga. Sept. 24, 2010).

Because at the time of the transfer Debtor was the sole title holder to the Property, and because the McFarlands are married, the Trustee is correct that Mrs. McFarland had no equitable title to the Property by virtue of marriage.[6] Debtor acknowledges this point, but argues he held a half interest in the Property in an implied trust for the benefit of his wife.

---

[6] Georgia is not a "community property" state. Ghee v. Retailers Nat'l Bank, 271 F. App'x 858, 860 (11th Cir. 2008)(citing O.C.G.A. §19-3-9). In Georgia, courts recognize a spouse's equitable interest in marital property, and "[e]ach spouse is entitled to an allocation of [that] marital property based upon his or her respective equitable interest therein." Wier v. Wier, 287 Ga. 443, 444, 696 S.E.2d 658, 659 (Ga. 2010)(quoting Wright v. Wright, 277 Ga. 133, 134, 587 S.E.2d 600, 601 (Ga. 2003) (internal quotation marks omitted). However, "a [] claim for equitable division of property cannot be filed or maintained separate from divorce proceedings." Owens v. Owens, 248 Ga. 720, 721, 286 S.E.2d 25, 26 (Ga. 1982)(citing Segars v. Brooks, 248 Ga. 427, 428, 284 S.E.2d 13, 14 (Ga. 1981)).

✎AO 72A
(Rev. 8/82)

In Georgia there are two types of implied trusts – resulting trusts and constructive trusts.[7]  In re Lewis, 1996 WL 33401163, at *4 (Bankr. S.D. Ga. July 22, 1996).  The McFarlands contend Mrs. McFarland held equitable title by virtue of a purchase money resulting trust ("PMRT") pursuant to O.C.G.A. §53–12-130 and §53-12-131.  "A resulting trust is a trust implied for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property under any of the following circumstances . . . [a] purchase money resulting trust as defined in subsection (a) of Code Section 53-12-131 is established."  O.C.G.A §53-12-130(3).  "Settlor" is defined as the person who creates the trust.  O.C.G.A.  §53-12-2(11).  "A purchase money resulting trust is a resulting trust implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property."  O.C.G.A. §53-12-131(a).

Usually, when a person pays for the property of another, a presumption arises in favor of a PMRT benefitting the payor.  O.C.G.A. §53-12-131(b).  However, "[i]f the payor of

_____

[7]    The McFarlands' arguments in their briefs focus on the purchase money resulting trust, and there is no evidence of fraud or malfeasance in obtaining the Property.  Furthermore, for the reasons cited herein it is not against equity to uphold Debtor's ownership in the entire Property.  See O.C.G.A. §52-12-132.

AO 72A
(Rev. 8/82)

consideration and transferee of the property . . . are husband and wife . . . a gift shall be presumed" instead of a PMRT. O.C.G.A. §53-12-131(c).  This presumption may be rebutted "by clear and convincing evidence."  Id.  The "clear and convincing" evidentiary standard of proof is an intermediate standard which lies "between a preponderance of the evidence and proof beyond a reasonable doubt."  Kenyeres v. Ashcroft, 538 U.S. 1301, 1305 (2003) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). Clear and convincing evidence is evidence that "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  In re Ellis, 339 B.R. 136, 141-42 (Bankr. E.D. Pa. 2006); see also U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985) (clear and convincing evidence is evidence "so clear, direct and weighty and convincing" as to enable the court to find the facts at issue "without hesitancy"); In re Estate of Burton, 453 S.E. 2d 16 (Ga. 1995)(The clear and convincing standard "requires a greater quantum and a high quality of proof in plaintiff's favor" than a preponderance standard)(quoting Barber v. Perdue, 194 Ga.App. 287, 289, 390 S.E.2d 234, 236 (Ga. Ct. App. 1989) (internal citations omitted)).

The McFarlands argue the presumption of a gift under O.C.G.A. §53-12-131(c) does not apply in this case because former Georgia Code Ann. §53-506 (which was repealed in 1981) was in

🖎AO 72A
(Rev. 8/82)

place when the Property was purchased in 1968 and provides no presumption of a gift between and husband and wife.[8]  See Woodward v. Woodward, 266 S.E.2d 170 (Ga. 1980).  After reviewing the subsequent Georgia Supreme Court case of Owens v. Owens, 286 S.E.2d 25 (Ga. 1982), I find the appropriate statute is O.C.G.A. §52-12-131(c), and the presumption of a gift arises.   In Owens, the Georgia Supreme Court commented on the post-repeal applicability of O.C.G.A. §53-506 stating:

> We note here, however, that in May, 1981, when this case was tried, there was no presumption of a gift by [husband to wife] under Code Ann. §53-506.  Woodward v. Woodward, 245 Ga. 550, 554, 266 S.E.2d 170 (1980). (Code Ann. §53-506 applies where the wife's money is used to make the purchase, but title is placed in the name of the husband).  That code section was repealed by Ga.L. 1981, p. 522, 704, eff. July 1, 1981. **Therefore, upon retrial, Code Ann. §108-116 [O.C.G.A. 53-12-131(c)][9] will be applicable**: "As between husband and wife . . . payment of purchase money by one, and causing the conveyance to be made to the other, shall be presumed to be a gift; but a resulting trust in favor of the one paying the money may be shown and the presumption rebutted."

---

[8]  Former Georgia Code §53-506 stated:  "A wife may give property to her husband, but a gift will not be presumed. The evidence to support it must be clear and unequivocal, and the intention of the parties must be free from doubt." O.C.G.A. §53-506, repealed by Ga. L. 1981, p. 522, 704, eff. July 1, 1981.

[9]  The Court now applies O.C.G.A. §53-12-131, which, like §108-116, provides for a gift to be presumed under these facts.  See O.C.G.A. §53-12-131, Editor's Notes, ("In light of the similarity of the statutory provisions, decisions under . . . §108-116 . . . O.C.G.A. §53-12-28 . . . are included in the annotations for this Code Section.").

✎AO 72A
(Rev. 8/82)

Owens v. Owens, 286 S.E.2d at 27 (emphasis added).

Nevertheless, even without the presumption of a gift, the McFarlands must first show that Mrs. McFarland paid purchase money for the Property. O.C.G.A. §53-12-131(a). I find that the McFarlands have failed to satisfy the consideration element of a PMRT. The McFarlands claim that by obtaining the $5,000.00 loan of money set aside by Mrs. McFarland's father for her college education, Mrs. McFarland paid consideration for the transfer. However, this money was given by Mr. Harrison, not by Mrs. McFarland. While Mrs. McFarland testified that her father said the money was set aside for her college education and because she did not go to college, it was her money, it is also clear he never gave Mrs. McFarland the money. Trial Tr., Test. of Sherry H. McFarland, 35:22-25, 36:1, 20:8-11. Instead, he agreed to loan the funds to Debtor with the expectation of being repaid. Thus, Mrs. McFarland was not the person paying the consideration of $5,000.00 for the purchase of the Property.

Additionally, Mrs. McFarland had little means to pay for her purported half interest in the Property as she was making minimum wage for only a few years. She left the outside workforce within three years of the Property purchase, and no longer contributed as a wage earner. In none of the cases cited by the Debtor was a resulting trust established based solely on

19

the intention of the parties without the beneficiary being able to establish they contributed a substantial portion of the consideration. For example, in Talmadge v. Talmadge, 247 S.E.2d 61 (Ga. 1978) the husband, who put stock in wife's name, was entitled to a resulting trust because he had paid for the stock with funds from a joint account, and his wife had taken more money out of the account than she put in. In Owens, 286 S.E.2d 25, the wife claiming the benefit of the trust had worked in textile mills for the entirety of her marriage such that she had contributed as much or more to the purchase price as her husband. In Citizens & S. Nat'l Bank v. Martin, 272 S.E.2d 711 (Ga. 1980), the wife claimed a trust in property which she had inherited and then deeded to her husband for business purposes. The claimants in In re Georgian Villa, Inc., 10 B.R. 79 (Bankr. N.D. Ga. 1981), acquired an equitable interest by fulfilling their obligations to transfer other property pursuant to an exchange agreement. Finally, in Woodward, 266 S.E.2d 170 (Ga. 1980), the wife had been continuously employed, she had contributed to the household income during the parties' entire thirteen year marriage, and she contributed half the equity used to purchase the condominium from the sale of a jointly owned house. Therefore, it was appropriate for her to receive a half interest in the condominium when the couple divorced. In the current case, Mrs. McFarland has failed to show a contribution to establish a PMRT.

AO 72A
(Rev. 8/82)

The McFarlands also argue Mrs. McFarland paid purchase money for the Property because the money used to repay the loans came from their Joint Account, to which Mrs. McFarland contributed funds, albeit a substantially smaller sum than Debtor. As the funds were in their Joint Account, the McFarlands assert that Mrs. McFarland had an ownership interest in these funds. Nevertheless, "[w]here a party seeks to establish a beneficial interest in certain real estate on the theory that he has paid a part of the purchase money, he must show with certainty what part of the total purchase price he paid." Brown v. Leggitt, 174 S.E.2d 889, 891 (Ga. 1970); see also Weekes v. Gay, 256 S.E.2d 901, 904 (Ga. 1979)(finding the introduction of canceled checks and bank statements, along with testimony of the real estate broker who sold the house, sufficient to show with adequate certainty the amount of the purchase price paid). The McFarlands have not shown what part of the purchase price Mrs. McFarland allegedly paid. At best they have offered vague testimony regarding the amount Mrs. McFarland contributed to the Joint Account. This is insufficient to support the McFarlands' contention that Mrs. McFarland paid consideration for the Property to obtain a beneficial interest.

The McFarlands alternatively argue that if there is a presumption of gift between spouses, then Debtor's contributions to the Joint Account were already gifted to Mrs. McFarland "to

✎AO 72A
(Rev. 8/82)

disburse as she saw fit," and therefore her funds were exclusively used to purchase the Property. However, in Georgia "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." O.C.G.A. §7-1-812. It is presumed that a party funding the account does not intend to make a gift of the funds deposited to the joint account holder. In re Mclain, 2004 WL 5309101, at *7 (Bankr. N.D. Ga. Sep. 30, 2004) (citing In re Sandlin, 2002 WL 934564 (Bankr. M.D. Ga. Feb. 19, 2002)). The McFarlands' testimony that Mrs. McFarland handled the family's finances as she saw fit and had unfettered access to these funds does not make the deposits joint property or a gift. See id.; Parker v. Kennon, 530 S.E.2d 527, 530 (Ga. Ct. App. 2000). Again, this arrangement is common between spouses but does not establish legal ownership or an equitable division of property. Therefore, I find that the McFarlands have not established that the funds he contributed to the Joint Account belonged to Mrs. McFarland.

Even assuming Mrs. McFarland contributed consideration, the issue is whether Mrs. McFarland has presented clear and convincing evidence to rebut the presumption that any payment she might have made to purchase the Property was a gift. I find that she has not.

✎AO 72A
(Rev. 8/82)

"To rebut the presumption [of a gift], the paying spouse is required to prove by clear and convincing evidence . . . that a [PMRT] was contemplated by both parties by way of an understanding or agreement." In re Thornton, 620 S.E.2d 410, 412 (Ga. Ct. App. 2005)(citing Brock v. Brock, 610 S.E.2d 29 (Ga. 2005)). Such understanding or agreement must have existed at the time the transaction was performed. See Ford v. Ford, 256 S.E.2d 446, 447-48 (Ga. 1979). Thus, "[w]hen determining the existence of a [PMRT], the primary focus is on the intention of the parties" at the time of the purchase. In re Lewis, 1996 WL 33401163, at *5 (Bankr. S.D. Ga. July 22, 1996). Courts may consider "all facts and circumstances surrounding the transaction to determine whether the parties intended a [PMRT]." Id. (citing Harrell v. Harrell, 290 S.E.2d 906 (1982); Talmadge, 247 S.E.2d at 61). The McFarlands argue that they, along with Mr. Harrison, always intended that the Property be held jointly. Moreover, Debtor testified that people in the community considered the Property to be both Mr. and Mrs. McFarland's property and referred to it as "Sherry and Tom's land." Trial Tr., Test. of Thomas J. McFarland, 62:1-7. After considering the matter, I find these statements are in the familial equitable title sense rather than in actual, legal ownership. Certainly, the Harrisons both knew how title was vested. The fact that Mrs. McFarland's parents and neighbors referenced the Property as "Tom and

AO 72A
(Rev. 8/82)

Sherry's" or "Sherry and Tom's" does not satisfy the clear and convincing standard. The McFarlands knowingly went along with this structure for more than forty years.

Georgia has no law of presumed equal ownership between spouses. In re Hraga, 467 B.R. 527, 530 (Bankr. N.D. Ga. 2011). As noted, *supra*, "a [] claim for equitable division of property cannot be filed or maintained separate from divorce proceedings." Owens v. Owens, 286 S.E.2d 25, 26 (Ga. 1982)(citing Segars v. Brooks, 284 S.E.2d 13, 14 (Ga. 1981)). As the owner of at least two other houses, the McFarlands knew how to title property jointly yet chose not to do so in regards to the Property until Debtor knew he may lose the entire Property as a result of the Suit.

Further, intent to jointly own the Property as husband and wife does not necessarily equate to intent to create a PMRT. To establish a PMRT, the McFarlands must have intended when the Property was purchased, that Mrs. McFarland would supply the money for a portion of the Property and that, even though her husband had legal title to the Property, she would have the equitable interest in the Property. See Rosado v. Rosado, 662 S.E.2d 761, 763 (Ga. Ct. App. 2008)(to establish a PMRT, it must be shown that it was "the intent and purpose of the parties *at the time the conveyance was made* that the one claiming the benefit of the trust should pay the purchase-money in conformity

24

with such original intent and purpose of the parties.")(quoting Thompson v. Bearden, 453 S.E.2d 20 (Ga. 1995)). That intention must have been contemplated in some sort of understanding or agreement. Brock, 610 S.E.2d at 30; see also Ford, 256 S.E.2d at 446 (testimony that husband placed house in wife's name to prevent creditors from reaching the property but intended to maintain joint interest in the property was insufficient to rebut presumption of gift in absence of understanding or agreement with wife). No such agreement or understanding to create a PMRT has been shown.

Indeed, while the McFarlands focus on the $5,000.00 loan from Mr. Harrison, $10,000.00, or two-thirds of the purchase price, was obtained from Atlantic. There is no indication that Atlantic considered the Property joint property, or whether they would have financed the Property if jointly owned. Debtor was the main financial earner for the household and at the time of the loans, the Notes and Security Deeds were rendered and the title was vested to fully protect Atlantic's and Mr. Harrison's security interests in the Property. Furthermore, the sellers were directed to vest title in Mr. McFarland's name alone. Accordingly, the evidence surrounding the intent of the parties is insufficient to rebut the presumption of a gift here.

The McFarlands also argue that Mrs. McFarland retained equitable title of a half interest in the Property because "other

circumstances" created an implied trust. A.P. Dckt. No. 76 at 10; see also In re Georgian Villa, Inc., 10 B.R. 79, 82-83 (Bankr. N.D. Ga. 1981); Murrah v. First Nat'l Bank of Columbus, 170 S.E.2d 399, 400 (Ga. 1969). The "other circumstances" language relied upon in was superseded in a subsequent versions of the Georgia Trust Code, and thus, "courts can no longer imply a trust when 'other circumstances' indicate the beneficial interest in property is separate from legal title." Estate of Maddox v. Metropolitan Prop. and Casualty Ins. Co., 2012 WL 5473495, at *6 (S.D. Ga. Nov. 9, 2012)(noting the repeal of O.C.G.A. §53-12-26).[10]  Furthermore, even if such "other circumstances" could create an implied trust, I find the "other circumstances" in this matter have been fully considered and do not give rise to an implied trust. Intent to create an implied trust at the time of purchase is still required, and as previously discussed I have found that the McFarlands have not established such intent was present. See Georgian Villa, Inc., 10 B.R. at 83 ("[T]he intention of the parties is the essential element of an implied resulting trust.").

In bankruptcy and otherwise, legal ownership is pertinent to the orderly distribution of assets. The Trustee

---

[10]   O.C.G.A. §53-12-26 (formerly Code Ann. §108-106) was repealed in 2005 and adopted in part in O.C.G.A. §53-12-130 and §53-12-132 but without the "other circumstances" language. See Estate of Maddox, 2012 WL 5473495, at *6.

AO 72A
(Rev. 8/82)

often liquidates property for the benefit of creditors. The McFarlands' arrangement is common between husbands and wives, even when they do not jointly own property. Referring and considering property as community property among family members and friends is common, but it does not equate to joint ownership of property. To allow non-title owning spouses to challenge marital property as jointly owned through an implied trust is beyond the scope of recognized trusts in Georgia. Legal ownership records are important. This is an understandably difficult situation for the McFarlands. The difficultly in their argument is further highlighted by considering if Mrs. McFarland was the debtor in bankruptcy as the result of an accident, instead of her husband. The Trustee and her creditors would be faced with trying to overcome the title records with arguments of customary marital property arrangements. The evidence in this case is insufficient to create an implied trust. For these reasons, I find Debtor made a transfer of his interest in property under 11 U.S.C §548 when he executed, delivered and recorded the Deed in 2009.

**Actual Intent.**

Recognizing a transfer of interest in the Property has occurred, the next consideration is whether the transfer was fraudulent under §548(a)(1)(A). "In order [for a Trustee] to avoid a transfer on the basis of actual fraud under section

548(a)(1)(A) of the Bankruptcy Code, [he] must prove by a preponderance of the evidence that the Debtor made the transfer . . . with the actual intent of hindering, delaying, or defrauding a creditor." In re Gulf N. Transp., Inc., 323 B.R. 786, 791 (Bankr. M.D. Fla. 2005)(citing In re Model Imperial, Inc., 250 B.R. 776, 791 (Bankr. S.D. Fla. 2000)); see also In re Rothstein Rosenfeldt Adler, P.A., 2010 WL 5173796, at *4 (Bankr. S.D. Fla. Dec. 14, 2010). The McFarlands contend there was no evidence Debtor intended to defraud creditors.

The statutory clause is in the disjunctive and thus is satisfied by establishing one intent – whether it is to hinder, delay, or defraud a current or future creditor. Pettie v. Bonertz (In re LendXFinancial), 2012 WL 1597394, at *5 (Bankr. N.D. Ga. March 19, 2012). Because proof of actual intent to defraud creditors can seldom be established by direct proof, "[t]he fact finder may infer actual fraud from the circumstances surrounding the transfer, and the presence of certain recognized 'badges of fraud.'" Wessinger v. Spivey (In re Galbreath), 2002 WL 34721370, at *2 (Bankr. S.D. Ga. Nov. 5, 2002)(citing Dionne v. Keating (In re XYZ Options, Inc.), 154 F.3d 1262, 1271-75 (11th Cir. 1998)); see also In re Siskey Hauling Co., Inc., 2011 WL 1519969, at *3 (Bankr. N.D. Ga. Jan. 6, 2011)("proving actual intent under §548(a)(1)(A) does not require direct proof," and plaintiffs may plead "circumstantial evidence recognized as

✎AO 72A
(Rev. 8/82)

badges of fraud, which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.")(quoting Schilling v. Heavrin (In re Triple S Restaurants, Inc.), 422 F.3d 405, 414 (6th Cir. 2005))(internal quotation marks omitted).

Badges of fraud include whether:

(1)  The transfer was to an insider;

(2)  The debtor retained possession or control of the property transferred after the transfer;

(3)  The transfer was disclosed or concealed;

(4)  Before the transfer was made the debtor had been sued or threatened with suit;

(5)  The transfer was of substantially all the debtor's assets;

(6)  The debtor absconded;

(7)  The debtor removed or concealed assets;

(8)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9)  The debtor was insolvent or became insolvent shortly after the transfer was made;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

In re XYZ Options, Inc., 154 F.3d at 1271-72. "Although the presence of one specific badge will not be sufficient to

establish fraudulent intent, the confluence of several can constitute conclusive evidence of an actual intent to defraud." Id. at 1271 n. 17 (quoting In re Sherman, 67 F.3d 1348, 1354 (8th Cir. 1995))(internal quotation marks omitted).

In this case, the Trustee has produced evidence of multiple badges of fraud. To begin with, Debtor transferred an interest in the Property to his wife, an insider.[11] Next, Debtor executed the Deed after he had been sued by Ms. Hagen and eleven days after the failed mediation. Additionally, as discussed hereafter, the consideration Debtor received in exchange for the transfer was not reasonably equivalent to the value of the interest transferred.

While Debtor testified that he thought he was only transferring the portion of the Property that equitably belonged to his wife, I find the timing of the transfer suspicious. Furthermore, since I have found that Mrs. McFarland did not hold title to half of the Property, the fact that Debtor contends he thought she already owned a half interest does not negate this badge of fraud. Indeed, Debtor admitted that the motivation to convey the Property was Ms. Hagen's lawsuit, and Debtor was aware that Ms. Hagen's counsel intended to aggressively pursue his

---

[11]   Section 101(31) of the Bankruptcy Code defines insider to include a relative of the debtor when the debtor is an individual. 11 U.S.C. §101(31)(A).

✎AO 72A
(Rev. 8/82)

client's claim against him.   Trial Tr., Test. of Thomas J. McFarland, 57: 14-24.

The confluence of these badges of fraud lead me to conclude that the transfer was made with "actual intent to hinder, delay, or defraud an entity to which the debtor . . . became . . . indebted."   11 U.S.C. §548(a)(1)(A).   For these reasons, the transfer of the half interest from Debtor to Mrs. McFarland is avoided pursuant to 11 U.S.C. §548(a)(1)(A) and §550(a).

## 11 U.S.C. §548(a)(1)(B).

To succeed with his §548(a)(1)(B) claim, Trustee must prove the elements of §548(a)(1)(B) by a preponderance of the evidence.   In re Lumbar, 457 B.R. 748, 753 (B.A.P. 8th Cir. 2011).   Based upon the previous findings in this order, Trustee's §548(a)(1)(B) argument is contingent on the occurrence of two additional facts:   first, that Debtor received less than reasonably equivalent value in exchange for the transfer, and second, that Debtor believed he would incur debts beyond his ability to pay.   11 U.S.C. §548(a)(1)(B)(i)-(ii)(III).

No proof of specifically fraudulent intent is required for a trustee to avoid a transfer as constructively fraudulent under §548(a)(1)(B).   See In re Franklin Transp., Inc., 2006 WL 2384998, at *6 (Bankr. N.D. Ala. July 19, 2006).   However, proof of constructive fraud does require a showing, by a preponderance

AO 72A
(Rev. 8/82)

of the evidence, that the Debtor received less than reasonably equivalent value in exchange for the transfer of Property. <u>See</u> <u>In re Galbreath</u>, 2002 WL 34721370, at *2 (citing 11 U.S.C. §548(a)(1)(B)); <u>see also</u> <u>In re Ojemeni</u>, 2008 WL 7870966, at *2 (Bankr. N.D. Ga. 2008).

What constitutes "reasonabl[y] equivalent value is generally a question of fact . . . to be [determined] as of the date of transfer." <u>In re Knight</u>, 473 B.R. 847, 851 (Bankr. N.D. Ga. 2012)(citing <u>In re Sw. Waffles, LLC</u>, 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011)); <u>see also</u> <u>In re Chase & Sanborn Corp.</u>, 904 F.2d 588, 593 (11th Cir. 1990)("It has long been established that whether fair consideration has been given for a transfer is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." (citing <u>Mayo v. Pioneer Bank & Trust Co.</u>, 270 F.2d 823, 829-30 (5th Cir. 1959)(internal quotation marks omitted)). Generally, "courts have examined such factors as the good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length." <u>In re Seaway Int'l Transp., Inc.</u>, 341 B.R. 333, 334 (Bankr. S.D. Fla. 2006)(citing <u>Heritage Bank v. Steinberg (In re Grabill Corp.)</u>, 121 B.R. 983, 994 (Bankr. N.D. Ill. 1990)).

"By its terms and application, the concept of 'reasonably equivalent value' does not demand a precise dollar-

for-dollar exchange." _In re Advanced Telecomm. Network, Inc.,_ 490 F.3d 1325, 1336 (11th Cir. 2007)(quoting _In re Perry Cnty. Foods, Inc.,_ 313 B.R. 875, 895 (Bankr. N.D. Ala. 2004)). "Nevertheless, courts are to scrutinize the value of transfers much more closely in situations . . . which involve transfers to insiders." _Id._ (citing _Gen. Electr. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.),_ 185 B.R. 801 (B.A.P. 9th Cir. 1995)). Transfers between family members are particularly scrutinized. _Cf._ _Kelly v. Simmons,_ 73 Ga. 716, 1884 WL 2456, at *2 (Ga. 1884)(transfer of property from husband to wife and children must be "scanned closely"); _In re Dulock,_ 282 B.R. 54, 57 (Bankr. N.D. Ga. 2002)(vast body of law suggests that "conveyances between family members should be more, not less, closely scrutinized than transfers to unrelated parties"); _In re Poole,_ 15 B.R. 422, 432 (Bankr. N.D. Ohio 1981)("Transfers between husband and wife or between family members are suspect and subject to the strictest scrutiny, particularly when the consideration supporting the transfer is inadequate.").

In addition, transfers for psychological or intangible benefits do not meet the reasonably equivalent value test. _See e.g._, _Walker v. Treadwell (In re Treadwell),_ 699 F.2d 1050, 1051 (11th Cir. 1983)(love and affection insufficient to meet reasonably equivalent value standard); _Tavenner v. Smoot,_ 257 F.3d 401, 408-09 (4th Cir. 2001) ("courts have consistently held

that a transfer motivated by love and affection does not constitute reasonably equivalent value for the purposes of 11 U.S.C. 548."); <u>U.S. v. Chen</u>, 2010 WL 5315915, at *5 (D. Nev. Dec. 20, 2010)("Emotional or mental benefits to the debtor do not constitute reasonably equivalent value."). Indeed, "value" for purposes of §548 is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. §548(d)(2)(a). Thus, reasonably equivalent *value* can only encompass "property" and "satisfaction or securing of a present or antecedent debt of the debtor," and cannot be a mere "benefit." <u>In re Rood</u>, 2011 WL 1742016, at *4 (Bankr. D. Md. Feb. 12, 2011).

Value may be direct or indirect. <u>In re Fruehauf Trailer Corp.</u>, 444 F.3d 203, 212 (3d Cir. 2006). If the Trustee makes a *prima facie* showing that the alleged "value" given to the Debtor provided no direct value to the Debtor, the burden shifts to the defendants to show that tangible and concrete indirect value was provided and to quantify that value. <u>In re TOUSA, Inc.</u>, 408 B.R. 434, 438 (Bankr. S.D. Fla. 2009); <u>In re TriGem America Corp.</u>, 431 B.R. 855, 868 (Bankr. C.D. Cal. 2010)("Once the plaintiff makes a *prima facie* showing that no sufficient direct benefit was received in the transaction, it is the defendants' burden to prove sufficient *indirect* benefit that is

AO 72A
(Rev. 8/82)

tangible and concrete."); <u>In re Richards & Conover Steel Co.</u>, 267 B.R. 602, 614 (B.A.P. 8th Cir. 2001)("The party claiming to have delivered value must quantify it.").

At the time of the transfer, Mrs. McFarland gave Debtor no monetary consideration. Instead, the Deed stated that the consideration for the transfer was (1) love and affection, (2) the $5,000.00 loan from Mrs. McFarland's father, (3) Mrs. McFarland's delivery of loan payments, and (4) her contributions to the Property by clear cutting and for several years maintaining the rental house.

Keeping in mind the heightened scrutiny required when a transfer is made to a family member, I find that Mrs. McFarland did not provide reasonably equivalent value in exchange for the transfer. Value must be given <u>at the time of transfer</u>. <u>Pettie v. Bonertz (In re LendXFinancial)</u>, 2012 WL 1597394, at *8 (Bankr. N.D. Ga. March 19, 2012)(finding that transferee did not give reasonably equivalent value by operating a horse farm on the Property and paying some property taxes during the time debtor owned the property because such actions were not given at the time of transfer). None of the recited consideration was provided by Mrs. McFarland at the time of the transfer. Love and affection is insufficient to constitute reasonable equivalent value. Moreover, the deed itself reflects it is a "Deed of <u>Gift</u>"

AO 72A
(Rev. 8/82)

and, as previously discussed, Mrs. McFarland has failed to establish her consideration paid for the Property.

Even if Mrs. McFarland's contributions did provide some direct value to the Debtor, I find that such value was not reasonably equivalent to the interest transferred. "If a court determines the debtor gained at least some value as a result of the transfer, what follows is a comparison: whether the debtor got roughly the value it gave." Fruehauf Trailer Corp., 444 F.3d at 212-13. Courts value the asset at the time of the transfer for purposes of determining reasonably equivalent value. Smith v. Am. Founders Fin., Corp., 365 B.R. 647, 666 (Bankr. S.D. Tex. 2007). In this case, Debtor transferred a half interest in the Property to his wife in 2009. Debtor's schedules, filed only two years later in 2011, valued a one half interest in the Property at $350,000.00.[12] Case Dckt. No. 10, Sch. A. Accordingly, the

---

[12] The Court takes judicial notice and admits Debtor's bankruptcy schedules into evidence. See In re Harmony Holdings, LLC, 393 B.R. 409, 413-14 (Bankr. D.S.C. 2008)("[V]erified Schedules and Statements filed by a debtor are not just pleadings, motions or exhibits thereto. They are evidentiary admissions." (quoting In re Earl, 140 B.R. 728 (Bankr. N.D. Ind. 1992) (internal quotations omitted)); see also In re Kane, 470 B.R. 902, 925 (Bankr. S.D. Fla. 2012)(bankruptcy schedules are signed under oath and constitute admissions with regard to the information contained therein); In re Willis, 2010 WL 5463066, at *3 (Bankr. N.D. Ga. Dec. 26, 2010)("[T]he bankruptcy court may properly consider as admissions or evidence any information contained in debtor's bankruptcy schedules . . . .").

✎AO 72A
(Rev. 8/82)

Property interest conveyed to Mrs. McFarland was approximately $350,000.00 at the time of the transfer.

"A precise calculation of the exchanged value is unnecessary . . . if there is sufficient evidence to conclude the values are plainly not equivalent." In re LendXFinancial, LLC, 2012 WL 1597394, at *9 (citing Fruehauf Trailer Corp., 444 F.3d at 213-14). Here, Mrs. McFarland's contributions to the maintenance of the Property and delivery of loan payments are not reasonably equivalent to the interest she received. In addition, while she may have facilitated the loan with her father, this does not constitute reasonably equivalent value. This was not her money, and it is much more aligned with love and affection, which is insufficient to constitute reasonably equivalent value.

In light of the above, I hold that Mrs. McFarland did not provide reasonably equivalent value in exchange for the interest in the Property transferred.

**Incurred debts beyond his ability to pay.**

The last component of the Trustee's §548(a)(1)(B) is whether Debtor "believed that [he] would incur, debts that would be beyond [his] ability to pay as such debts matured." 11 U.S.C. §548(a)(1)(B)(ii)(III). "In other words, a debtor cannot transfer property or incur obligations in anticipation of financial difficulties. It is irrelevant that the debtor is solvent at the time of the transaction or did not intend to

✎AO 72A
(Rev. 8/82)

defraud creditors in the transaction." 4 NORTON BANKR. L. & PRAC. 3d §67:6.

The "'inability to pay debts' prong of section 548 is met if it can be shown that the debtor made the transfer or incurred an obligation contemporaneous with an intent or belief that subsequent creditors likely would not be paid as their claims matured." In re WRT Energy Corp., 282 B.R. 343, 415 (Bankr. W.D. La. 2001). Such an intent or belief may be inferred where the facts and circumstances surrounding the transaction indicate that the debtor could not have reasonably believed he would be able to pay his debts as they matured. Id.; In re LendXFinancial, LLC, 2012 WL 1597394, at *11; see also In re Taubman, 160 B.R. 964, 986 (Bankr. S.D. Ohio 1993)(requiring a subjective belief standard, but noting that such belief may be found from the surrounding facts and circumstances where no express belief has been stated).

The Court infers from the facts and circumstances surrounding this transaction that Debtor conveyed the interest in the Property at a time when he believed he would incur debts beyond his ability to pay. While the ultimate judgment of $1,050,000.00 was not rendered against Debtor until more than a year after the Deed of Gift was executed and recorded, it was executed just eleven days after the failed mediation with Ms. Hagen. A.P. Trial Ex. P-16. Debtor was well aware at the time

AO 72A
(Rev. 8/82)

of the transfer that Ms. Hagen had been seriously injured, had suffered substantial lost wages, and required substantial medical treatment as a result of the traffic accident. Trial Tr., Test. of Thomas J. McFarland, 55:10-25, 56:1-24.

Further, Debtor's contention that Ms. Hagen's counsel was trying to "ruin" or "destroy" him also supports a finding that Debtor believed the judgment would exceed the value of his assets at the time of the transfer. See id. at 57:14-18; see also Dckt. No. 53 at 3. Indeed, Debtor acknowledged that the motivation to transfer the interest in the Property to Mrs. McFarland came from Ms. Hagen's lawsuit and testified that the transfer was undertaken to protect Mrs. McFarland's purported half interest in these lots from his creditors. Trial Tr., Test. of Thomas J. McFarland, 57:19-24.

Although Debtor testified that he believed his assets would cover Ms. Hagen's claim because the first settlement offer was $500,000.00, only after the mediation was unsuccessful, when Debtor perceived that Ms. Hagen's counsel would try to "ruin him", did he execute the Deed of Gift. Id. at 57:3-9; 57:16-18. This shows a belief that the judgment would exceed the value of his assets at the time Debtor initiated the transfer to Mrs. McFarland. See In re LendXFinancial, LLC, 2012 WL 1597394, at *11 (inference that debtor transferred property with the belief that its ongoing ability to pay maturing debts would be

compromised arose where debtor was aware of a potential judgment liability greater than debtor's net worth and where debtor transferred its principal asset for nominal or no consideration).

For these reasons, the Court holds that the Trustee has met his burden of proving the elements of §548(a)(1)(B).

**11 U.S.C. §548(c).**

Mrs. McFarland has asserted a counterclaim, arguing that if the Trustee successfully avoids the Deed of Gift, she should retain her equitable interest in the Property pursuant to §548(c). A.P. Dckt. No. 8, Counterclaim. She contends that she would be entitled to recover her half interest in any proceeds realized from the Trustee's sale of the Property because she is a good faith transferee who took the interest in the Property for value. Id.

Section 548(c) provides:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. §548(c). This provision acts as a safe harbor for a transferee of a fraudulent transfer as long as the transferee can establish that it received the property for value and in good faith. Wessinger v. Spivey (In re Galbreath), 286 B.R. 185, 213

(Bankr. S.D. Ga. 2002). A transferee or obligee who asserts the §548(c) defense bears the burden to demonstrate that the requirements of §548(c), value and good faith, have been met. Id. at 197.

Good faith is an "'indispensable element' and predicate, of this shelter provision." In re McLaren, 236 B.R. 882, 902 (Bankr. D.N.D. 1999). Good faith under §548(c) means that, viewed objectively, the transferee neither knew nor should have known of the fraudulent nature of the transfer. Bowers & Merena Auctions, LLC v. Lull (In re Lull), 386 B.R. 261, 21 (Bankr. D. Haw. 2008); Cadle Co. v. White, 2006 WL 798900, at *8-9 (D. Conn. Mar. 21, 2006)("The transferee's knowledge is objectively judged by assessing whether the transferee knew or should have known of the transferor's fraudulent intent . . . ."). Under §548(c), "a transferee lacks good faith if (1) it has information placing it on inquiry notice that the transferor was insolvent, or that the transfer might be made with a fraudulent purpose, and (2) a diligent inquiry would have discovered the fraudulent purpose of the transfer." In re Dreier LLP, 462 B.R. 474, 491 (Bankr. S.D.N.Y. 2011).

Given the facts of this case, as previously discussed, Mrs. McFarland has not met this standard.[13] Viewed objectively, a

_____

[13] Because I find that Mrs. McFarland has not met the good faith standard, I do not reach the value element of §548(c), but she

AO 72A
(Rev. 8/82)

reasonable person in Mrs. McFarland's situation would have been aware of the fraudulent nature of the transfer.  As she was the transferee, she had knowledge of what consideration (or lack thereof) she contributed.  She also had knowledge of the circumstances surrounding the transfer and Debtor's intention behind the transfer.  Mrs. McFarland was aware of every badge of fraud that applies to the Debtor and appears to have equally participated in Debtor's attempt to protect the half interest in the Property from Mr. McFarland's creditors.

For these reasons, I find Mrs. McFarland has not met her burden to show that she is a good faith transferee for value under §548(c).  Galbreath, 286 B.R. at 197 ("The transferee . . . who asserts the §548(c) defense bears the burden to show that the requirements set out in §548(c) have been met.").  Accordingly, her counterclaim is denied.

**Depositions.**

The McFarlands have attempted to introduce the deposition transcripts of:  Joan H. English (A.P. Trial Ex. D-8, Dec. 2, 2011) and Carolyn K. Reed (A.P. Trial Ex. D-5, Dec. 2, 2011) for supporting evidence that "the McFarlands at all times intended to jointly own the property", to which the Trustee has

---

also has failed to establish that she provided value for a half
interest in the Property.

✎AO 72A
(Rev. 8/82)

asserted hearsay objections.[14]   See A.P. Dckt. No. 76 at 10-13; A.P. Dckt. No. 75 at 16-17.

The Trustee's objections center around purported statements by Mrs. McFarland's mother and father to which Ms. Reed and Ms. English testified during depositions. Specifically, the McFarlands seek to introduce Ms. English's statements that Mr. Harrison had called her and told her "that Sherry and Tom had purchased the Property," and Ms. Reed's statement that Mrs. McFarland's mother had told her that "Tom and Sherry had bought the property." A.P. Trial Ex. D-8, 5:2-16; A.P. Trial Ex. D-5, 5:21-25.  The McFarlands also offer Ms. English's statement that "[Mrs. McFarland] grew up on that creek . . . and loved it.  And I know [Mr. Harrison] wanted [Mrs. McFarland] to have that property and be on the creek, too, you know, since she loved it so much." Dckt. No. 76, p. 11; A.P. Trial, Ex. D-8, 6:6-11, Dec. 2, 2011.

Counsel for the McFarlands stated at trial that Ms. English and Ms. Reed are elderly and were physically unable to attend the trial.  Trial Tr., Statement of Mr. Bordeaux, counsel

---

[14]   Other deposition transcripts also were offered at trial with the parties agreeing to argue their admissibility in post-trial briefs; however, the McFarlands' post-trial brief was limited to the deposition testimony of Ms. English and Ms. Reed, and therefore the Court limits its analysis to that testimony only. A.P. Dckt. No. 76; see also Trial Tr., Statement of Mr. Bordeaux, counsel for the Defendants, 96:13-18 (noting that his response would include the relevant testimony).

for the Defendants, 91:11-13. Mrs. McFarland's mother and father are deceased.  With this background, the Trustee does not dispute the unavailability of these witnesses pursuant to Rule 804(a)(4), but objects to the admissibility of these statements as hearsay.

Hearsay is a statement a declarant does not make while testifying at the current trial or hearing that a party offers in evidence to prove the truth of the matter asserted in the statement. FED. R. EVID. 801(c). As an initial matter, I find Ms. English's statement, "[Mrs. McFarland] grew up on that creek . . . and loved it.   And I know [Mr. Harrison] wanted [Mrs. McFarland] to have that property and be on the creek, too, you know, since she loved it so much," to be admissible as non-hearsay.  Ms. English's testimony is from personal knowledge and is offered to show her personal impressions, rather than a statement of Mr. Harrison's offered for the truth of the matter asserted.  Accordingly, the Trustee's objection is overruled as to that testimony.

As to the other disputed testimony, the McFarlands argue that these statements are not being offered for the truth of the matters asserted, but rather that these statements of Mr. and Mrs. Harrison show the Harrisons' and the McFarlands' intent and state of mind relative to the transaction. A.P. Dckt. No. 76 at 11-13.  The McFarlands argue that these statements fall under

the following exceptions to the hearsay rule: Federal Rules of Evidence 803(3) and (20) which provide:

> (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

> (20) Reputation Concerning Boundaries or General History. A reputation in a community—arising before the controversy—concerning boundaries of land in the community or customs that affect the land, or concerning general historical events important to that community, state, or nation.

FED. R. EVID. 803(3) and 803(20).

The McFarlands argue that Ms. Reed's and Ms. English's testimony that Mr. and Mrs. Harrison informed them that Sherry and Tom had purchased the Property should be admissible under Rule 803(3) because it is being offered to show the Harrisons' and the McFarlands' intent. Dckt. No. 76 at 11-13. I note first that Rule 803(3) limits the exception to the *declarant's* state of mind, and so these statements cannot be offered to show the McFarlands' state of mind. Additionally, these statements are not admissible to show that the McFarlands purchased the Property jointly as that goes to the truth of the matter asserted. Nevertheless, I find that these statements should be allowed as evidencing the Harrisons' state of mind. While the Trustee argues that Mrs. Harrison's statement to Ms. Reed is hearsay

AO 72A
(Rev. 8/82)

within hearsay because she was not a party to transaction, I find her statement that "Tom and Sherry had bought the property" to be admissible. Although Mrs. Harrison was not a direct party to the purchase, Mrs. McFarland has testified that her mother was aware of the structure of the transaction and was a party to the discussions regarding the purchase and the financing. Trial Tr., Test. of Sherry H. McFarland 37:22-38:6.

Finally, as for whether any of the testimony to which the Trustee has objected is admissible under the Rule 803(20) exception, I find that it is not. Rule 803(20) applies to statements regarding reputation. Neither Ms. Reed nor Ms. English testified as to the reputation in the community surrounding the ownership of this land. Rather, they each testified to their own personal knowledge.

Pursuant to the foregoing, the Trustee's action to set aside the transfer of the Property pursuant to 11 U.S.C. §548(a)(1)(A) and (B)(i)-(ii)(III) and 11 U.S.C. §550 is **ORDERED GRANTED**. Debtor's counter-claim is **ORDERED DENIED**. The depositions of Joan H. English and Carolyn K. Reed are **ORDERED ADMITTED**.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia,

this _30th_ day of September, 2013.

AO 72A
(Rev. 8/82)